Friday, October 3Gth. The Judges delivered their opinions.
Judge Tucker.
The record exhibits the singular case of two Chancellors in different districts disclaiming juris *514 diction of a case brought before them by a bill of injuuction to a judgment rendered in the District Court of Char-lottesville. The Chancellor of the Richmond district, it is a^eSe<^ in the bill, refused to grant the injunction, although the defendants all resided within his jurisdiction, because the court, whose judgment was sought to be enjoined, was not within his jurisdiction. The Chancellor of the Staunton district granted the injunction, but dismis-, sed the bill afterwards, because, although the court which rendered the judgment sought to be enjoined was within his district, yet none of the defendants resided therein. — > This court has been favoured with the reasons of both Judges in support of their respective opinions; and I think it must be confessed, the reasoning of both is very strong, if not perfectly convincing. My own opinion is that both may be right, there being, as I think, a casus omissus in the law, which the legislature only can remedy. But as I understand the rest of the court to entertain a different opinion, Lean, without difficulty, subscribe to it; especially as the only object of the inquiry is where to apply for a remedy in similar cases.
Judge Roane.
I will premise — 1. That the rule, that all statutes in pari materia áre to be considered, in forming a construction upon any subject, applies emphatically ' in this case, where the two principal Acts which come in question are nearly cotemporaneaus, and avowedly parts of the same system; and, 2ndly, that a construction ousting a portion of our citizens of all equitable jurisdiction shall not lightly be made in any case; much less in this, in-which the legislature seems anxiously to have wished not only, to preserve rights already existing, but to extend and improve them.
By the 7th section of the Act of January 1802, the chancery courts thereby established were vested with “ the u same jurisdiction and ppwers, within their respective “ districts, in all and every matter and thing, as the High “ Court of Chancery possessed on the first day of January “ 1802, including (inter alia) the granting injunctions, &c., “ subject only to the same constitutional and legal restric- “ tions and limitations as the said High Court of Chan- “ eery was then bound by.” The restrictions here alluded to I understand to relate, principally, to the nature of the case, (that is, that it must be an equity-case, and not a law-case,) and to the amount of the sumv in question.
*515 Prior to the establishment of this new system, the High Court of Chancery could have granted injunctions to any judgment rendered within the limits of its jurisdiction ; and this is now also the case with the several County Courts in Chancery who grant injunctions to their own judgments; without any inquiry, in either case, as to the residence of any defendant. It would seem a natural construction, therefore, and conformable to a general principle, if a like power was deemed to belong to the several Chancery Courts, as to all judgments rendered within their respective districts. The 7th section of the Act of January 1802, standing singly, is ample to confer this power; but in making a construction upon the subject, we must take into consideration every part of the same and other acts touching the premises.
It is said that the 12th section of the Act of January 1802, which gives leave to a plaintiff to sue within a district in which one of several defendants resides, relates also to injunctions, and controls the construction of the 7th section; and that injunctions, therefore, shall not be granted by the Judge of the court, unjess one of the defendants resides within the district. This provision in the 12th section seems analogous to the proceeding against absent defendants under our Act, where it is necessary that one defendant should reside within the State: — but in that case the proceeding is by an original suit in equity; and this circumstance, alone, would be pretty strong to denote that the suits, intended in this last clause, were suits of the same character; viz. original suits in equity.
If, therefore, the construction in this case depended solely upon this Act of January 1802, I should doubt extremely whether the operation of the 12th section would narrow that of the 7th, on the point in question, and whether the said 12th section relates at all to injunctions; more especially as the general chancery law of 1792, (which now applies within the several districts, as it before applied to the commonwealth at large,) while it lays down the restrictions to the obtaining of injunctions, is totally silent as to the residence of the defendant. But this construction does not depend solely upon the Act of January 1802; — we receive great light upon this subject from the Act of 2d February 1802, passed only ten days thereafter, and avowedly supplementary to the former. By the 1st section of that Act, the clerk of the High Court of Chancery, in arranging and allotting to the several Chancery Courts “ the causes and suits depending in *516 “ the said High Court of Chancery on the 1st of February “ 1802” is to have regard to the residence of the defendant, or defendants, as the case may be: and by the 6th section thereof, i» sending out the “ papers in all injunctions depending therein on the 1st of February 1802,” in ascertaining to what Chancery Court they shall be allotted, he is to be governed by the locality of the law Court, in which the judgment enjoined was obtained; — so, by the 4th section, “ all injunctions awarded by the judgment of the “ High Court of Chancery previous to the first of Febru- “ ary 1802 may be issued by the clerk of said court in “ like manner as if the Act of January 1802 had not passed, “ to be arranged and allotted as is prescribed in other “ cases of injunctions therein after mentioned,” viz. .as is prescribed by the 6th section just noticed.
A review of the several sections of this Act of February 1802, shows evidently that, under the general terms “ causes and suits” in the 1st section, injunctions were not comprehended, for they are provided for by another section ; and that, in allotting injunctions to the several Chancery Courts, no respect is had to the residence of the defendant, but only to the general principle before noticed; that is, to the court in which the judgment enjoined was rendered.
These words “ causes and suits” in the 1st section of the Act of February 1802, are fully as extensive as the word “ suit” mentioned in the 12th section of the Act of January 1802; and yet they are incontestibly explained by other parts of the same Act to mean suits,-other than injunctions. Wherefore then shall the 12th section of the Act of January 1802, (taking all the Acts into consideration,) be construed to abridge a power given by ample words in the 7th section of the same Act, and either introduce a principle entirely new in our code in relation to injunctions, (respecting the residence of the defendant, rather than the court in which the judgment was rendered,) or withdraw from (perhaps) a numerous class of cases, all equitable jurisdiction whatsover.
I have said that the general principle of our laws was that the locality of the law court determines the equitable jurisdiction. There is nothing in the Act of January 1802, singly considered, which abandons this principle; and, on the contrary, the Act of February 1802 seems strongly to support it. In most cases the restraint upon the clerk of the law court is amply sufficient for the complainant; for without the act of the clerk no execution can go upon the *517 judgment; and, this being the case, the defendants, wherever residing, will find their interest in coming in, submitting to the jurisdiction, and moving to dissolve the injunction. If, before the clerk of the law court receives notice that an injunction is awarded, he has, in fact, de-vested himself of his power, by actually issuing the execution into another district beyond the limits of the Chancery Court, I am not at present prepared to say whether the process of the court may not pursue the execution, on the general principle that, where a jurisdiction exists, every necessary power shall be implied, to carry it into complete effect. If so, no difficulty whatever can exist in the case: but, if otherwise, the fault is with the plaintiff in the injunction, who has delayed to apply to the Court of Equity, or to serve, or give notice ol’its process, until after the execution has gone beyond the limits of the district. But, even in that view of the case, the plaintiff, although he might resort to other remedies, is also entitled to his injunction, to avail him quantum valere potest.
Upon the whole, I think there is nothing in this case which should induce us to depart from the general principle of our law's upon this subject, which respects the scite of the law court in determining the equitable jurisdiction. Some inconveniences may arise from this construction, under certain circumstances: but inconveniences certainly exist under a contrary construction; and, especially, in creating a concurrence of jurisdictions in favour of several Courts of Equity, and carrying parties defendant into districts extremely remote from the original scene of controversy. My opinion, therefore, is, that the plea in this case ought to have been overruled, and the cause sustained. — > With resjiect to costs, as the shape which the cause assumed was evidently imposed upon the appellee, with a view to settle an important general principle, if we had power, I should be of opinion to divide them; — but I believe that the Act establishing this court (a) is imperious, that costs shall be recovered by the party prevailing. J J 1 °
judge Flehing.
The only question in this case is, whether the Court of the Chancery District, of Staunton had jurisdiction to grant an injunction to a judgment at law rendered -within, but where the plaintiff resided without the district? or, in other words, whether the jurisdiction of the court is local and permanent, or mutable and fluctuating all over the State, and must vary according to the residence of a contending party?
*518 Previous to the month of January 1802, the High Court of Chancery had general jurisdiction over the whole State, anc¡. was considered as always open, so as to grant, injunctions, writs of ne exeat, certiorari, and other process usually granted in vacation.
The business in the said court having accumulated in an extraordinary degree, it was by the Legislature thought expedient, for the more speedy and convenient administration, of justice, to branch it into three distinct courts, assigning to each a particular district, -within -which the Judges were, respectively, as well in term time as in vacation, to exercise the same jurisdiction and powers as the High Court of Chancery, or the Judge thereof, possessed, or might have exercised on the 1st day of January 1802. But, in my conception, neither the said courts, nor the Judges thereof in vacation, possess any jurisdiction or powers, without the. limits of their respective districts as established by law.
With respect to injunctions, — in the 6th section of the Act of February 1802, supplemental to the Act,, passed a few days before, concerning the High Court of Chancery, it is provided that the papers in all injunctions depending in the said High Court of Chancery, on the 1st day of February 1802, should be sent, with copies of all orders and interlocutory decrees therein made to the Chancery Court of that district within which the judgment enjoined was rendered; without any regard to the residence of any, or either, of the parties: and it appears to me, indeed, that, when once a suit is commenced and prosecuted, the parties appearing, either plaintiff or defendant, are always supposed to be in court, until the business is finally determined.
Suppose that this suit, instead of having been brought in the District Court of Charlottesville, had been in the-County Court of Albemarle, which is held at the same place, and the defendant had shown good equitable cause for enjoining the judgment; could not that County Court, with propriety, have enjoined the judgment, without regard to the residence of Pollok, the plaintiff, who, itseems^ ,.Presides within the chancery district of RichmondP Certainly it might: and, if so, I can perceive no reason why the Chancery District Court of Staunton should not exercise the same powers. And, suppose ah appeal, on either side, from the decision of the County Court on the injunction, to what district would the appeal have properly lain? To the district of Staunton, undoubtedly. And why? — » *519 Because the jurisdiction is local, and the judgments at law, as well as the decision of the County Court on the injunction would both have been within that district, notwith•standing all the parties reside within the Richmond chancery district.
If the appellants had obtained an injunction from the Judge of the Richmond District Court, with an order to the clerk of the District Court of Charlottesville, where the judgment was rendered, to suspend the issuing an execution, or to the sheriff, (in case one had been issued,) to stop all further proceedings thereon, neither of those officers would have regarded such order; because it would have been extrajudicial, as coming from a tribunal having no jurisdiction or control over the judgment at law.
Much has been said as to the inconveniences that would, or might, arise from this construction of the law; but I conceive it might be easily shown that a contrary construction would be productive of still greater inconveniences; but, however that may be, it is the province of the Legislature, and not of the judiciary, to provide a remedy for the evil, if one really exists.
I am of opinion, upon the whole, that the demurrer to the plea to the jurisdiction of the court was improperly overruled; and that the decree, dismissing the bill, ought to be reversed.
Judge Lyons concurring in the opinion delivered by the two last Judges, the decree of the Superior Court of Chancery for the Staunton district was reversed, and the cause remitted for further proceedings.

Rev.Code Vo]' P 63> ch. 63. sect..